GENERAL TIRE, INC., Appellee,

v.

MEHLFELDT, Appellant.

[Cite as *Gen. Tire, Inc. v. Mehlfeldt* (1997), 118 Ohio App.3d 109.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17793.

Decided Feb. 5, 1997.

*Buckingham, Doolittle & Burroughs, James D. Kurek* and *John W. McKenzie,* for appellee.

*Sternberg, Newman & Associates* and *Richard Sternberg,* for appellant.

DICKINSON, Judge.

Defendant Horst Mehlfeldt has appealed from the trial court's reformation of a separation agreement defendant entered into with plaintiff General Tire, Inc. The trial court concluded that the parties were mutually mistaken about the amount of compensation defendant was to receive. Defendant has argued that the trial court (1) incorrectly received into evidence memoranda of two proposals the parties discussed prior to executing the separation agreement because their admission was barred by the parol evidence rule, and (2) incorrectly reformed the final separation agreement on the ground that the parties were mutually mistak-

en about the amount of compensation defendant was to receive. This court reverses the judgment of the trial court because plaintiff did not prove, by clear and convincing evidence, that the parties were mutually mistaken.

I

Defendant Horst Mehlfeldt was the senior vice president of finance and chief financial officer of plaintiff General Tire, Inc. On February 7, 1993, he entered into a five-year employment contract with plaintiff, which, among other things, provided him compensation in the event that plaintiff terminated him without cause. This compensation included (1) one year of salary at his then current base rate, either in a lump sum or twelve monthly installments, (2) an amount equal to one-twelfth of the previous year's bonus for each month he actively worked during the year he was terminated, (3) continuation of health care coverage for him and his dependents for one year, and (4) outplacement and secretarial services for six months.

While defendant's employment contract was in effect, plaintiff notified him that he was one of several high level executives who were slated for termination. Thereafter, defendant began negotiations with Ross Bailey, plaintiff's vice president of human resources, to attempt to arrive at a mutually satisfactory separation agreement. Bailey and defendant first spoke about his termination on the telephone on January 1, 1994. During that conversation, defendant informed Bailey that he was aware of the negotiations in which plaintiff was engaged with other executives who were slated for termination. He also told Bailey that he expected to be "treated fairly," meaning that he wanted to receive compensation that was comparable to the amount of compensation plaintiff had offered similarly situated executives.

After that telephone conversation, Bailey sent defendant a proposal, dated January 13, 1994. According to Bailey, the purpose of that proposal was to offer defendant compensation in lieu of benefits he was entitled to receive under his 1993 employment contract. Bailey explained that he had authority to offer defendant up to $100,000 more than the amount defendant would receive under the employment contract. In return, defendant would release plaintiff from any claims he might have as a result of his employment or termination and agree not to sue plaintiff on those claims. The proposal provided for a total settlement amount of $479,950, including (1) a $213,750 cash settlement, (2) the full value of the bonus defendant received during 1992 ($79,200), (3) a $30,000 severance allowance, (4) a 1993 automobile valued at $22,000, (5) a two-year consulting agreement valued at $120,000, and (5) outplacement and secretarial expenses for six months. Defendant and Bailey met to discuss the proposal on January 14, 1994. At that meeting, defendant indicated that he wanted to receive two years'

salary at his base rate ($190,000) plus the then current value of his long-term incentive plan. Bailey responded that he would check into it and get back to defendant with an answer.

Bailey communicated again with defendant by letter, dated January 25, 1994. In that letter, he proposed a final settlement amount of $516,186, including (1) a $213,750 cash settlement, (2) the full amount of the bonus defendant received during 1992 ($79,200), (3) a $30,000 severance allowance, (4) a 1993 automobile valued at $22,000, (5) a $100,000 severance supplement, (5) outplacement and secretarial expenses for six months, (6) the vested part of defendant's 1992 long-term incentive plan ($21,667), (7) an individual performance bonus for 1993 ($20,000), and (8) payment for vacation time defendant would have accrued during 1994 ($14,569).

Defendant and Bailey met to discuss the second proposal on January 26, 1994. At that meeting, defendant requested that plaintiff modify his qualified pension plan to give him credit for an additional five years of service. According to Bailey, he informed defendant that plaintiff could not amend the qualified pension plan in that manner. He also allegedly told defendant that it would be too costly for plaintiff to purchase an annuity that would provide defendant retirement benefits equivalent to what he would receive if plaintiff could modify the pension plan. He estimated that that cost would be from $241,000 to $289,000.

At the conclusion of the January 26, 1994, meeting, Bailey believed that he and defendant had a "deal." According to him, he thought defendant had accepted the terms of the second proposal and, therefore, all that remained for him to do was to incorporate the figures from that proposal into a formal separation agreement. Defendant's position, on the other hand, was that he never told Bailey that the figures in the second proposal were acceptable to him. He admitted that he was aware that Bailey intended to incorporate some of the figures from the second proposal into a final separation agreement, but expected that the final figure would be higher in light of his request for more retirement benefits. He explained that he made it clear to Bailey that he wanted to be "treated as well as or better than" other terminated executives, including one individual who was allegedly offered $700,000 and another who was allegedly provided increased retirement benefits.

After the meeting, Bailey procured a copy of a form separation agreement from plaintiff's legal department and modified it, without assistance, to reflect what he believed was the parties' final agreement. The document was captioned "Agreement, Release, And Covenant Not To Sue." According to Bailey, he intended to draft the document so that defendant would receive, in lieu of any benefits he was entitled to under his employment contract, an automobile and a lump sum of $494,186 in cash. The consideration for this amount would be defendant's release of plaintiff from any claims arising from his employment or termination and his

agreement not to sue plaintiff on those claims. Bailey, however, made a mistake in drafting and, as a result, the document obligated plaintiff to pay defendant $484,186 *plus* any compensation provided for in his employment contract. Bailey also neglected to include in the separation agreement a provision for the transfer of the automobile.

Bailey delivered the separation agreement he had drafted and a cover letter to defendant on February 4, 1994. When defendant reviewed the agreement, he discovered that it was materially different from any settlement figures plaintiff had offered in its two proposals. He testified that he assumed that plaintiff offered him compensation provided for in his employment contract in addition to the lump sum amount and the automobile to satisfy his demand for more retirement benefits. He claimed that he thought the method of compensation was "unusual," but said he "didn't care" because he would receive the same amount that he would have if plaintiff had increased his retirement benefits.

Defendant executed the final settlement agreement on February 18, 1994, and returned it to Bailey along with a formal letter of acceptance. Defendant's termination became effective February 28, 1994. Bailey wired defendant a lump sum payment of $494,186 and arranged for title to the automobile to be transferred to him. On April 5, 1994, defendant met with Daryl Hollnagel, plaintiff's chief legal officer, and asked him why plaintiff had not paid him the rest of the money provided for in the final separation agreement. Defendant said he assumed that he was to receive the rest of the money in twelve monthly installments. After this meeting, Hollnagel discussed the matter with Bailey and reviewed the final separation agreement and the two proposals himself. Based on that review, he determined that Bailey had made a mistake in drafting the separation agreement. This was the first time that any one affiliated with plaintiff realized that a mistake had been made. Hollnagel informed defendant of Bailey's mistake on April 8, 1994.

On April 29, 1994, plaintiff filed a complaint against defendant by which it sought (1) rescission of the separation agreement or (2) reformation of it to the extent that it obligated plaintiff to pay defendant more than $494,186 in cash. The stated grounds for rescission and reformation were mutual mistake, unilateral mistake, and fraud. Defendant filed two counterclaims against plaintiff by which he alleged that plaintiff still owed him money under the separation agreement and that plaintiff was guilty of abuse of process for having instituted this action. He sought damages for abuse of process and payment of money plaintiff owed him under the terms of the employment contract, which, according to him, was between $320,000 and $400,000. Plaintiff later amended its complaint to add a claim that defendant had fraudulently obtained title to the automobile and a claim that he had violated a covenant not to compete contained in his employment contract.

The trial court granted plaintiff summary judgment on defendant's abuse-of-process claim on September 20, 1995, and plaintiff voluntarily dismissed before trial its claim that defendant had violated the covenant not to compete. The remaining claims were tried to the court beginning January 8, 1996. On March 20, 1996, the trial court determined that the parties had been mutually mistaken about the amount of compensation defendant was to receive and reformed the separation agreement to provide that defendant was to receive only the lump sum of $494,186 in cash and the 1993 automobile. Defendant timely appealed to this court.

## II

### A

Defendant's first assignment of error is that the trial court incorrectly received into evidence memoranda of two proposals the parties discussed before executing the final separation agreement because their admission was barred by the parol evidence rule. Defendant's argument involves the introduction into evidence of plaintiff's January 13, 1994 proposal and plaintiff's January 25, 1994 proposal. The trial court, over defendant's objection, received those proposals into evidence and permitted plaintiff to question witnesses about them.

The parol evidence rule prohibits a party from using evidence of "antecedent understandings and negotiations" to contradict or vary the terms of a written contract. *Ed Schory & Sons, Inc. v. Soc. Natl. Bank* (1996), 75 Ohio St.3d 433, 440, 662 N.E.2d 1074, 1080. Such evidence may be used, however, to prove the existence of a mistake. *Irwin v. Irwin* (Sept. 27, 1996), Lake App. No. 95–L–102, unreported, 1996 WL 586762; *Mangano v. Dawson* (June 13, 1995), Columbiana App. No. 93–C–72, unreported, 1995 WL 358685; Calamari & Perillo, Law of Contracts (1970) 86, Section 42. Evidence regarding the two proposals the parties discussed before executing the final separation agreement was relevant to plaintiff's claim that the parties were mistaken about the amount of compensation defendant was to receive. The trial court, therefore, did not err by receiving those proposals into evidence or by permitting plaintiff to question witnesses about them. Defendant's first assignment of error is overruled.

### B

Defendant's second assignment of error is that the trial court incorrectly reformed the final separation agreement on the ground that the parties were mutually mistaken about the amount of compensation defendant was to receive. He has argued that the trial court should not have reformed the agreement as it did because plaintiff did not prove, by clear and convincing evidence, that the parties were mutually mistaken about the amount of compensation. According to him, any mistake made was solely a unilateral one on plaintiff's part.

Reformation is the modification of an instrument to express the actual intent of the parties. *Phoenix Concrete, Inc. v. Reserve–Creekway, Inc.* (1995), 100 Ohio App.3d 397, 400, 654 N.E.2d 155, 157. It can be used to remedy a mutual mistake, but not a unilateral one. *Bellish v. C.I.T. Corp.* (1943), 142 Ohio St. 36, 26 O.O. 234, 50 N.E.2d 147, paragraph five of the syllabus; *Elmar Co. v. Bernacchia* (Apr. 22, 1992), Lorain App. No. 91CA005153, unreported, 1992 WL 82656; *Foley v. Lipka* (Nov. 3, 1988), Highland App. No. 673, unreported, 1988 WL 118701. Reformation based on mutual mistake is appropriate when the parties made the same mistake and understood the contract as the complaint alleges it should have been. *Snedegar v. Midwestern Indemn. Co.* (1988), 44 Ohio App.3d 64, 69, 541 N.E.2d 90, 95–96. The party alleging mutual mistake has the burden of proving its existence by clear and convincing evidence. *Frate v. Rimenik* (1926), 115 Ohio St. 11, 152 N.E. 14, paragraph one of the syllabus; *Justarr Corp. v. Buckeye Union Ins. Co.* (1995), 102 Ohio App.3d 222, 225, 656 N.E.2d 1345, 1346–1347.

Plaintiff did not meet its burden. Although there was convincing evidence that plaintiff did not intend to pay defendant more than the lump sum and the automobile and that Bailey believed that the written agreement accomplished that purpose, there was no evidence that defendant was similarly mistaken about the effect of the written agreement. Any mistake, therefore, was unilateral on the part of plaintiff.

A unilateral mistake occurs when one party recognizes the true effect of an agreement while the other does not. *Edgewater Ins. Serv., Ltd. v. WMT Real Estate, Inc.* (Apr. 15, 1996), Stark App. No. 1995CA00325, unreported, 1996 WL 243808. Rescission is appropriate in the case of some unilateral mistakes. *Elmar Co., supra,* at *8.

Since the parties were not mutually mistaken about the amount of compensation defendant was to receive, the trial court erred by reforming the separation agreement to reflect plaintiff's intent to offer defendant less than the amount provided for in the agreement. Defendant's second assignment of error is sustained.

## III

Defendant's first assignment of error is overruled, and his second assignment of error is sustained. The judgment of the trial court is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BAIRD, P.J., and SLABY, J., concur.