DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant Horst K. Mehlfeldt has appealed from two judgments of the Summit County Common Pleas Court, one that rescinded a severance agreement between defendant and plaintiff General Tire Incorporated, and one that denied defendant's motion for a new trial. Defendant has raised seven assignments of error. This Court affirms the judgment of the trial court.
 I.
On January 25, 1993, defendant entered into a five-year employment contract with plaintiff. That employment contract contained a severance package ("1993 severance package"). Pursuant to the terms of the 1993 severance package, plaintiff was required to compensate defendant through monetary payments if plaintiff terminated defendant's employment without cause.
Also during 1993, plaintiff began eliminating several senior management positions to reduce costs. As part of those efforts, plaintiff decided to eliminate defendant's position and terminate his employment. Instead of providing defendant with the benefits of the 1993 severance package, plaintiff and defendant entered into negotiations to draft a new severance agreement that, according to plaintiff, would have provided defendant with a "significantly more generous" payment than the 1993 severance package would have provided. That new severance package was given in exchange for defendant's promise not to sue plaintiff on any claims related to his employment.
After several discussions, plaintiff's representative, Ross Bailey, drafted the new agreement using a standardized form. The contract was printed on a form entitled "Agreement, Release and Covenant Not to Sue." Mr. Bailey claimed that the parties had decided on a severance package that would have consisted of a lump-sum payment of $494,186 and a company car worth $22,000. According to Mr. Bailey, the new severance package was supposed to provide for that compensation. The agreement as drafted, however, failed to reflect that intention. It provided that defendant was to receive the "normal benefits" contained in the 1993 severance package, as well as "additional benefits" worth $494,186. Furthermore, that agreement did not even mention the $22,000 company car.[1]
Plaintiff claimed that the agreement, as drafted, contained a mistake. Plaintiff argued that defendant was to receive only $494,186 cash and the company car. Plaintiff claimed that the 1993 severance package had already been taken into account in the $494,186 figure. Mr. Bailey had made a mistake, according to plaintiff, because the "additional benefits" should not have been listed as $494,186, but should have been listed as $494,186 minus the value of the 1993 severance agreement. Plaintiff claimed that granting defendant both the 1993 severance package and the $494,186 would have provided him with a windfall of well over $250,000.
Defendant disputed that claim. Although he thought that the contract's language was odd, he believed that plaintiff intended to pay him the benefits of the 1993 severance package as well as the recently agreed-upon new severance package (consisting of a lump-sum payment of $494,186 and the company car). Defendant, therefore, demanded that plaintiff pay him both severance packages.
Plaintiff believed that either a mutual or a unilateral mistake had been made during the drafting of the contract and that the parties intended for plaintiff to pay no more than $494,186 and the company car. On April 29, 1994, plaintiff filed a complaint against defendant that requested reformation or rescission of the contract based on the mistake. Defendant filed two counterclaims that requested enforcement of the agreement as drafted and alleging abuse of process on plaintiff's part.
On March 20, 1996, the trial court determined that a mutual mistake had been made and reformed the contract. The trial court found that the parties intended that only $494,186 and the company car were to be included in the severance package. Defendant appealed to this Court. See General Tire, Inc. v. Mehlfeldt
(1997), 118 Ohio App.3d 109. This Court reversed the judgment of the trial court because plaintiff failed to prove by clear and convincing evidence the existence of a mutual mistake. Id. at 115.
On remand, the trial court determined that, instead of a mutual mistake, a unilateral mistake had been made on the part of plaintiff. In its May 13, 1998, judgment, it rescinded the contract. Because that contract no longer existed, the trial court ordered that the amount paid to defendant, $494,186 and the company car, be returned to plaintiff.
On May 27, 1998, defendant filed a motion for a new trial. On August 11, 1998, the trial court denied that motion. On August 28, 1998, the trial court entered another journal entry, explaining that defendant's counterclaim had been rendered moot by its May 13, 1998, judgment, and that, consequently, defendant's counterclaim was dismissed. On September 1, 1998, defendant timely appealed to this Court.
 II. A. The trial court erred in arriving at a finding, in theabsence of any evidence, that when [defendant] signedthe severance agreement he either knew, or should haveknown, that [Mr.] Bailey had simply made a unilateralmistake in drafting it.
Defendant has argued that the trial court improperly rescinded the new severance agreement based on Mr. Bailey's unilateral mistake because he did not know about that mistake. According to defendant, the trial court erred by making him suffer the consequences of Mr. Bailey's mistake. His arguments have essentially challenged the trial court's finding as being against the manifest weight of the evidence.
When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. Frederick v. Born
(Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. In determining whether a criminal conviction is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing State v.Martin (1983), 20 Ohio App.3d 172, 175; see, also State v. Otten
(1986), 33 Ohio App.3d 339, 340. Accordingly, before an appellate court will reverse a judgment as against the manifest weight of the evidence in a civil context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
As this Court noted in the first appeal of this case, "[a] unilateral mistake occurs when one party recognizes the true effect of an agreement while the other does not." General Tire,Inc. v. Mehlfeldt (1997), 118 Ohio App.3d 109, 115. A unilateral mistake may provide the basis for rescission of a contract. 1 Restatement of the Law 2d, Contracts (1981) 394, Section 153;Travis v. Tucker (Nov. 24, 1980), Greene App. No. 1158, unreported, 1980 Ohio App. LEXIS 11941, at *15-16. The burden of proving unilateral mistake is on the party seeking rescission and must be met by clear and convincing evidence. Lusardo v.Broadview Savings and Loan Co. (Mar. 14, 1991), Cuyahoga App. No. 58147, unreported, 1991 Ohio App. LEXIS 1073, at *8.
To demonstrate a unilateral mistake warranting rescission of a contract, the party seeking rescission must show: (1) that it made a mistake at the time the contract was entered into; (2) that the mistake had a "material effect" on the agreed exchange of performances that was adverse to the mistaken party; and (3) that the other party knew or should have known of that mistake.Aviation Sales, Inc. v. Select Mobile Homes (1988), 48 Ohio App.3d 90,93-94, applying 1 Restatement of the Law 2d, Contracts (1981) 394, Section 153. This Court concludes that this "AviationSales standard" was applicable in this situation. The trial court determined that Mr. Bailey had made a mistake by failing to record the correct amount of "additional benefits" that plaintiff had agreed to pay to defendant. That mistake had a material adverse affect on plaintiff because the contract, if enforced as drafted, essentially required plaintiff to pay the benefits of the 1993 severance package twice.
The trial court found that defendant either knew or should have known of the mistake and, instead of bringing it to plaintiff's attention, tried to capitalize on it by obtaining both the $494,186 cash payment that the parties had agreed to and the benefits provided by the 1993 severance package. The trial court relied upon testimony by Mr. Bailey and memoranda that had been sent to defendant, in which the terms of the new severance package were discussed and, according to Mr. Bailey, settled. In a January 13, 1994, "Inter-Organization Memo," Mr. Bailey sent a "severance proposal" to defendant listing the terms of the new severance package that plaintiff would pay to defendant upon the termination of his employment. According to that memorandum:
Here's a rough cut at what I'm [Mr. Bailey] thinking:
Terminate employment on 2/28/94.
Cash settlement in lieu of pay and benefits = $213,750.
Pro rata 1992 bonus = $79,200.
* * *
 The total cash compensation in that proposal was $457,950. Mr. Bailey testified that the "Cash settlement" and "Pro rata 1992 bonus" in that proposal represented the compensation that defendant would have been entitled to receive under the 1993 severance package. Mr. Bailey claimed that the 1993 severance package was, therefore, incorporated into the new severance package. Mr. Bailey sent a similar memorandum on January 25, 1994. The first three lines of that January 25, 1994, memorandum were the same as the first three lines of the January 13, 1994, memorandum quoted above. The total compensation proposed in the January 25, 1994, memorandum was $494,186. Mr. Bailey testified that that amount was the agreed upon total for the new severance package and that defendant recognized that the 1993 severance package had been incorporated into that amount.
Mr. Bailey testified that defendant was paid the $494,186 as provided by that new severance package. In addition, although that new severance package did not contain any reference to the company car, that vehicle had been transferred to defendant because, according to Mr. Bailey, the car was to be included in the new severance package as they had agreed at their meetings. Furthermore, defendant contacted an attorney in Cleveland to discuss the "quality" of the terms of the new severance agreement. Although defendant could not recall whether he and that attorney had discussed Mr. Bailey's mistake in that agreement, the two did discuss the "meaning" of the agreement and the appropriate way to respond to it.
Finally, Mr. Bailey testified that, although he had been the sole negotiator on plaintiff's behalf and although defendant had requested that no lawyers take part in the negotiations, defendant did not contact Mr. Bailey when he tried to obtain payment of the 1993 severance package. Instead, according to Mr. Bailey, defendant called one of plaintiff's attorneys, even though that attorney had played no role in the negotiations or in the contract's drafting.
From the evidence introduced by plaintiff, the trial court, as the trier of fact in this case, could have reasonably concluded that defendant knew or should have known about Mr. Bailey's mistake. The court could also have concluded that, with such knowledge, defendant attempted to take advantage of the mistake by collecting the 1993 severance package twice, such that rescission was appropriate.
To prevail on his manifest weight of the evidence challenge, defendant must have shown that the court lost its way in reaching those conclusions. Defendant has attempted to show that, notwithstanding plaintiff's evidence, he did not know about the mistake, had no way of discovering it, and should not have been made to bear the consequences of it. First, he has argued that his "expectation [of receiving more money] * * * destroyed any evidentiary basis for the trial court to rescind the severance agreement." According to defendant, the evidence in the record suggested that there had been no agreement regarding the terms of the new severance package and that he had expected to receive a much greater amount than the two memoranda indicated. Consequently, he has claimed that the trial court erred when it found that he had known or should have known about Mr. Bailey's mistake.
Defendant testified that he did not believe that any agreement had been reached and that he did not know that the new severance agreement drafted by Mr. Bailey contained a mistake. He also claimed that he expected more benefits, despite Mr. Bailey's claims that the two had agreed upon the terms of the severance package. Defendant has failed, however, to demonstrate that the trial court clearly lost its way. He did not dispute the fact that he had seen the two memoranda listing the proposed benefits of the new severance agreement. He admitted meeting with Mr. Bailey to discuss the terms of the severance package. He also contacted a Cleveland attorney to discuss the "meaning" of the new severance package. Furthermore, he tried to collect the 1993 severance package by contacting one of plaintiff's attorneys, even though Mr. Bailey had been the only person defendant had dealt with during the negotiations. The trial court could have concluded that defendant knew that Mr. Bailey had made a mistake in drafting the new severance agreement. The trial court could also have concluded that, based on his knowledge of Mr. Bailey's mistake, defendant attempted to avoid Mr. Bailey and quietly collect the money through one of plaintiff's attorneys without Mr. Bailey discovering his mistake. The trial court did not clearly lose its way when it found that defendant either knew or should have known of Mr. Bailey's mistake.
Notwithstanding the evidence introduced by either party, defendant has claimed that, even if a mistaken party presents a prima facie case demonstrating entitlement to rescission, several defenses exist that allow the non-mistaken party to enforce the contract as drafted. Three such defenses are listed in Section 154 of the Restatement. A party bears the risk of his mistake if: (1) the risk is allocated to him by agreement, (2) he is aware that, at the time the contract was made, he has only limited knowledge of the facts to which the mistake relates but treats his limited knowledge as sufficient, or (3) the risk is allocated to him by the court because it is reasonable in the circumstances to do so. 1 Restatement of the Law 2d, Contracts (1981) 402-403, Section 154. Neither party has adequately addressed Section 154, and this Court concludes that the rules described in that section are not applicable in this case.
Defendant has argued that another defense exists, and that it is applicable in this case. According to defendant, if a mistaken party is negligent in failing to discover his mistake, then he is precluded from obtaining relief through rescission of the contract. Defendant has claimed that, because Mr. Bailey's mistake was the result of his own negligence, the contract should be enforced against plaintiff as drafted.
Defendant has pointed to Citizens Federal Bank v. Moncarz
(May 31, 1995), Hamilton App. Nos. C-940300 and C-940301, unreported, 1995 Ohio App. LEXIS 2204, to support his argument. InMoncarz, the plaintiff bank filed suit against Moncarz to recover unpaid funds extended to him by the bank for overdrafts. The parties signed a settlement agreement, requiring Moncarz to pay $2,500 in installments. The agreement also included a release in which the bank waived all further claims against Moncarz arising from "any other amounts or accounts due" the bank. Later, the bank attempted to sue Moncarz for other bills that were owed at the time the bank entered into the settlement agreement. The court set forth the Aviation Sales standard, then noted:
 [T]he trial court found that Moncarz did not hide any facts about his accounts or their balances from the bank nor did he owe a duty to inform the Bank or its counsel what accounts he maintained. The Bank was chargeable with notice of its own accounts whether located in its Cincinnati or Columbus offices as information about those accounts was always in its possession. Therefore, the trial court concluded, the bank's mistake was due to its own negligence. * * *. We agree with the trial court's analysis which satisfies the Restatement rule. Further, the trial court's conclusion also satisfies the rule set forth in 1 Restatement of the Law 2d, Contracts (1981) 402-403, Section 154(c), which allows the court to place the risk of mistake on a party when reasonable under the circumstances.
Moncarz, supra, at *5. Defendant has argued that the Moncarz
court barred the bank from rescinding the previous settlement agreement due to its own negligence. However, this Court is not convinced that the Moncarz court applied such a rule. Despite writing in terms of the bank's negligence, the court noted that the trial court's analysis "satisfie[d]" the Restatement rule. The court was not clear in explaining what it meant by that language. This Court believes that either Rule 154(b) or 154(c) was applicable in that case. Rule 154(b) defines a specific type of negligence. In other words, the court may have concluded that the bank may have been negligent because it treated its knowledge of Moncarz's accounts as sufficient, even though it could have discovered the status of his accounts had it checked its own records. In addition, Section 154(c) applied because the court could have concluded that it was reasonable, under the circumstances of that case, to place the risk of the mistake on the bank. Accordingly, the bank's negligence may have precluded rescission of the contract in that case because its negligence fell under one of the specific Restatement-based rules.
Furthermore, the Restatement itself does not suggest that ordinary negligence should bar rescission of contracts. See 1 Restatement of the Law 2d, Contracts (1981) 416, Section 157. According to the Restatement, because a party can often avoid a mistake by the exercise of due care, relief would be nonexistent if that party's negligence barred rescission. Id. Only in "extreme" cases, amounting to what many courts have referred to as "gross negligence," is a party's negligence a bar to rescission of a contract. Id.[2]
In addition, this Court has previously held that, in some cases, negligence does not bar a mistaken party from obtaining relief on the contract. See Liezert v. Liezert (Oct. 2, 1991), Summit App. No. 15031, unreported. In Liezert, a separation agreement provided that the husband would pay the wife $300 per year in alimony. Evidence suggested that the parties actually intended that the husband pay $300 per month. The wife moved the trial court to collect the alimony arrearage. The trial court ruled that the wife was entitled to the money. The husband appealed and asserted that the wife was not entitled to any relief because she had been negligent in failing to discover the mistake in the contract's terms. This Court rejected the husband's argument, ruling that "a party's negligence is immaterial where the mistake is in the expression of the contract and the other party knew of the mistake and took advantage of it." Liezert,supra, at 4. Similarly, in this case, the evidence demonstrated that defendant either knew or should have known of Mr. Bailey's mistake. He tried to take advantage of that mistake by obtaining the $494,186 provided by the new severance package as well as the benefits of the 1993 severance package. In this case, the trial court properly concluded that defendant was not allowed to take advantage of Mr. Bailey's mistake because he either knew or should have known of that mistake.[3]
Finally, the Ohio Supreme Court has not held that ordinary negligence bars rescission of a contract in cases of unilateral mistake. In Reilley v. Richards (1994), 69 Ohio St.3d 352, the Court ruled, in the body of its opinion, that the doctrine of mutual mistake allowed for rescission of a real estate purchase contract when the mistake goes to a material part of that contract and when the complaining party is not negligent in discovering or causing that mistake. This Court concludes that Reilley is not applicable to this case. First, the Ohio Supreme Court dealt with a mutual mistake in Reilley, while this case deals with a unilateral mistake. Second, the Court did not include a syllabus in that case. The courts of appeals in Ohio are only bound by syllabus law from the Ohio Supreme Court. Rule 1(B) of the Supreme Court Rules for the Reporting of Opinions; World Diamond,Inc. v. Hyatt Corp. (1997), 121 Ohio App.3d 297, 306 ("The syllabus of an opinion issued by the Supreme Court is the law of the case, and all lower courts are bound to adhere to the principles set forth therein. * * * All trial courts and intermediate courts of appeals are charged with accepting and enforcing the law as promulgated by the Supreme Court and are bound by and must follow the Supreme Court's decisions. * * * The body of the opinion is considered dictum"). Reilley contained no syllabus and, therefore, no binding law that this Court must follow. This Court concludes that the language in the body ofReilley can and should be limited to its facts. That opinion is not, therefore, applicable to this case.
In light of the above discussion, this Court holds that a mistaken party's ordinary negligence in either causing the mistake or failing to discover that mistake will not bar him or her from obtaining rescission of a contract. Rather, some greater degree of negligence is required. As the Restatement noted, negligence to some degree exists in nearly all mistake situations. To preclude a mistaken party from rescinding a contract based on his ordinary negligence would essentially eviscerate the rule.
Applying the above to this case, this Court concludes that defendant has failed to demonstrate that plaintiff's negligence, if any, was of such a degree as to bar recovery in this situation. Indeed, defendant has failed to demonstrate any negligence on the part of plaintiff; he has merely concluded without analysis that plaintiff was negligent in making his mistake. He has seemingly asked this Court to do what the Restatement warned against, namely, finding negligence merely because a mistake was made and barring relief on that ground. Defendant has not argued that plaintiff owed him a duty and has not identified what that duty would have been. He also has not argued that plaintiff breached any duty that caused him damages.
The trial court committed no error when it found that plaintiff had demonstrated all of the elements necessary to obtain rescission of the new severance agreement. Its judgment was not against the manifest weight of the evidence. In addition, defendant has failed to demonstrate the applicability of any defenses that would have precluded plaintiff from obtaining the relief it sought. Defendant's first assignment of error is overruled.
 B. The trial court erred in failing to restore [defendant] tostatus quo ante when it erroneously ordered the rescissionof the "Agreement, Release and Covenant Not to Sue" ongrounds of unilateral mistake.
 The trial court erred as a matter of law when it grantedjudgment against [defendant] in the amount of $516,186 uponrescinding the written severance agreement, and, in doing so,failed to appreciate that [plaintiff] was obligated to payhim his salary and other benefits for the balance of his fiveyear employment contract.
Defendant has argued by his second and third assignments of error that, assuming the trial court's rescission of the new severance agreement was proper, it erred by failing to order his reinstatement. Defendant has claimed that, following the rescission of the new severance agreement, he was once again one of plaintiff's employees and should have been recognized as such by the trial court. Plaintiff has disputed defendant's argument, and has argued that he was returned to his original status, namely, that of a terminated employee.
Rescission is not merely a termination of a contract; it is an annulment of that contract. See Mid-America Acceptance Co. v.Lightle (1989), 63 Ohio App.3d 590, 599. The primary purpose of rescission is to place the parties back in their original positions as if the contract had never been formed. Id. A party who has avoided a contract based on mistake is entitled to restitution for any amount that it paid under the contract. See 1 Restatement of the Law, Contracts (1981) 222, Section 376. The mistaken party, however, also has obligations to the other party. It has been noted that "[h]e who seek equity must do equity."Schulz v. Sullivan (1993), 92 Ohio App.3d 205, 212. To accomplish that, generally the mistaken party must place the other party in status quo. Id.; see, also, Miller v. Biehgler (1931),123 Ohio St. 228, paragraph three of the syllabus. In that way, both parties are returned to the positions that they occupied before signing the rescinded contract.
Before the new severance agreement could be rescinded, plaintiff was required to return to defendant all that it had received from defendant under the terms of that contract. This Court concludes, however, that plaintiff received nothing from defendant under the terms of that new severance agreement. Thus, plaintiff was not required to return anything. Defendant has essentially argued that his resignation was a benefit that he gave to plaintiff under the new severance agreement and that plaintiff should return that benefit by reinstating him to his former position with the company. Defendant has failed, however, to point to any authority that would require plaintiff to re-employ him under the circumstances of this case. This Court concludes that plaintiff was, therefore, not required to re-employ him.
Defendant has admitted in his brief that he was "relieved" of his responsibilities with plaintiff shortly after mid-December 1993. He was, therefore, a terminated employee when he signed the new severance agreement at the end of February 1994. Following rescission of that agreement, he was returned to the status of a terminated employee and the 1993 severance agreement that he had signed with plaintiff once more covered his relationship with plaintiff. Plaintiff has conceded that defendant may have an action against it to enforce the provisions of the 1993 severance agreement. As a terminated employee during 1993, defendant would also have had an action against plaintiff to enforce the provisions of the 1993 severance agreement. Consequently, defendant was returned to his original position. Defendant's second and third assignments of error are overruled.
 C. The trial court abused its discretion, to the prejudice of[defendant], when the court denied [his] motion for a newtrial, and erroneously and summarily granted plaintiff'smotion dismissing defendant's counterclaim for abuse ofprocess on grounds that there was no genuine issue ofmaterial fact.
Through his fourth assignment of error, defendant has argued that the trial court erred when it failed to grant his motion for a new trial. He has argued that the trial court erred when it granted plaintiff summary judgment on his abuse of process counterclaim. That counterclaim was alleged in his answer to plaintiff's complaint. The trial court dismissed that claim, pursuant to Rule 56 of the Ohio Rules of Civil Procedure, on September 20, 1995.
In defendant's first appeal of this case, following the trial court's original judgment reforming the contract, he failed to challenge the summary judgment award to plaintiff on his abuse of process counterclaim. Defendant cannot, therefore, raise the issue for the first time at this stage in the proceedings before this Court. The doctrine of law of the case provides that the decision of a reviewing court remains the law of that case on the legal questions involved for all subsequent proceedings in that case at both the trial and reviewing levels. Nolan v. Nolan
(1984), 11 Ohio St.3d 1, 3-4. When an appellate court remands a case for proceedings consistent with its opinion, the trial court on remand may not expand or vary that mandate. Hawley v. Ritley
(1988), 35 Ohio St.3d 157, 160. Defendant did not raise the propriety of the trial court's granting of summary judgment on his abuse of process claim in the first appeal of this case. Furthermore, this Court's remand did not order the trial court to reconsider that issue. The granting of summary judgment to plaintiff on defendant's abuse of process claim was, therefore, settled. See Hubbard ex rel. Creed v. Sauline (1995), 74 Ohio St.3d 402,404-405; Springer v. Koehler Bros. (1990), 69 Ohio App.3d 592,597; Kennington v. Emergency Management Serv. (Jan. 24, 1996), Clark App. No. 95-CA-53, unreported, 1996 Ohio App. LEXIS 187, at *10. Defendant may not argue that issue before this Court during his second appeal. Defendant's fourth assignment of error is overruled.
 D. The trial court abused its discretion, to the prejudice of[defendant], when the court denied [defendant] a new trialand failed to address [his] counterclaim for specificperformance of the severance agreement with [plaintiff].
Through his fifth assignment of error, defendant has argued that the trial court erred when it failed to enforce the new severance agreement. He has basically reasserted his first assignment of error, trying to reargue it by claiming error in the trial court's failure to grant him a new trial on the issue. Because this Court has concluded that the trial court did not err when it rescinded the new severance agreement, however, defendant cannot complain that the trial court incorrectly failed to enforce that agreement. Defendant's fifth assignment of error is overruled.
 E. The trial court erred when it relied upon parol evidence of aparty's preliminary proposals, oral and written, tocontradict an otherwise unambiguous contract, a contract thatexpressly prohibited the other party's reliance on such oraland written statements to vary its plain language.
Defendant's sixth assignment of error is that the trial court incorrectly allowed plaintiff to introduce parol evidence. Specifically, the trial court permitted the introduction of evidence to demonstrate that a mistake had been made during the negotiations of the new severance agreement. Defendant has claimed error in the trial court's actions in that regard.
Defendant has attempted to re-litigate an issue already decided by this Court. Defendant raised similar challenges during his first appeal of this case. See Mehlfeldt, supra, at 114. This Court held that parol evidence may be introduced to demonstrate mistake. Id. Defendant's sixth assignment of error is overruled.
 F. The trial court erred when it adopted [plaintiff's] claim,contrary to the evidence, that "it was not disputed" thatthere was an agreement, rather than an unaccepted offer made"prior" to the drafting of the severance agreement.
Defendant has argued that the trial court incorrectly ruled that the parties had reached an agreement concerning the terms of the new severance package, prior to the drafting and signing of that new contract. He has claimed that the trial court failed to review the record, instead relying on plaintiff's trial brief. He has argued that, because the trial court "chose to parrot the language" of plaintiff's brief, it must have adopted plaintiff's arguments without reviewing the record.
Defendant has not demonstrated, beyond his mere allegations, that the trial court did not review the record when it made its decision. Indeed, following a review of the record by this Court, the trial court's judgment was found not to be against the manifest weight of the evidence. The evidence, therefore, supported the trial court's decision. Defendant's argument that the trial court failed to review the record is without merit. Defendant's seventh assignment of error is overruled.
 III.
Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. ___________________________ BETH WHITMORE
FOR THE COURT
SLABY, P. J.
CARR, J.
CONCUR
[1] Defendant already received the $494,186 cash payment and took title to the company car. Apparently, these payments were made shortly after defendant signed the new severance agreement drafted by Mr. Bailey.
[2] The Restatement has rejected the term "gross negligence," and has phrased the degree of fault in terms of "good faith and fair dealing." See 1 Restatement of the Law 2d, Contracts (1981) 416, Section 157.
[3] The Second District Court of Appeals has also rejected the rule of law proposed by defendant. See Doyle v. Doyle (Oct. 9, 1998), Greene App. No. 97 CA 143, unreported, 1998 Ohio App. LEXIS 4784, at *16-17 (calling such a rule "harsh" and "inflexible"); see, also, Grice v. Ryan Homes, Inc. (Feb. 5, 1987), Montgomery App. No. 10110, unreported, 1987 Ohio App. LEXIS 5788.