DECISION AND JOURNAL ENTRY
James West has appealed from a decision of the Summit County Court of Common Pleas in which it declared that Sharon Reitz was entitled to specific performance on the contract between them, and dismissed West's counterclaim for rescission. West has asserted that the trial court erred when it dismissed his counterclaim because (1) he had the contractual right to void the contract and (2) there was a genuine issue of material fact as to whether he was entitled to rescind the contract pursuant to the doctrine of mutual mistake. We overrule West's first assignment of error, sustain his second, reverse the judgment of the trial court and remand for further proceedings.
 I
West and Reitz entered into an agreement that called for West to purchase a vacant lot from Reitz. West, or someone working on West's behalf, prepared the contract using a preprinted form. West signed the agreement on July 23, 1998, and Reitz signed it on July 26, 1998. Several changes were made to the contract and both parties initialed it on July 26, 1998.
The contract contained the following provision:
 12) VACANT LAND: Should the sale involve vacant land, BUYER has 30 days from date of Acceptance to inspect the property for its suitability for BUYER'S intended purpose, including sewer/septic permits. SELLER grants BUYER the right of access and the right to dig test holes on the property, however, BUYER must return the property to its original condition. If BUYER is not satisfied with the inspection report, BUYER may void this Agreement whereupon earnest monies on deposit shall be returned to the BUYER.
The contract defined "Acceptance" as "the signing and/or initialing of the Agreement by the latter of the persons to do so without making material change."
Reitz requested that the closing be delayed on the sale because a single mortgage covered both the property being purchased by West and an adjacent lot. West agreed to add a clause to the contract, which reads, "4) SPECIAL CONDITIONS: PARCEL 67-51996 IS SOUTH OF PARCEL 67-51995[.] CLOSING TO OCCUR AT THE SAME TIME AS 2224 COOLEDGE WHICH IS CURRENTLY FOR SALE."
According to West, he told Reitz' agent, Roger Keys, that he would not make an offer unless the lot had access to City of Akron sewer. West averred that his observations in the immediate neighborhood indicated to him that the area had access to sewer. West said that Keys "told me that he had checked with the City of Akron and had been informed by the City that the property had access to public sewer." West attached a copy of e-mail correspondence between Keys and Reitz, in which Keys reminded Reitz that, "Both he and I checked with the city before his contract was written and they told us there was no problem." West received this e-mail as a carbon copy from Keys, and certified that the copy attached to his affidavit was a true and accurate copy of it. West has asserted by affidavit that "At the time of the signing of the Agreement, both Roger Keys and I understood that my offer to purchase was conditional upon utilities, including sewer, being available at the site; and we both believed that to be true." "Immediately after executing the Agreement," West had Helen Bailey, his partner in building scattered site homes, check with the City of Akron regarding sewer availability. According to West, "she relayed to me that * * * public sewer was available to the vacant lot." West did not formally apply for a sewer permit, which he said would cost approximately $895, and would not be needed for the foreseeable future because of the delayed closing date. In contrast, both Reitz, and Keys asserted by affidavit that they did not, at any time, represent to West that City of Akron sewer was available to the property.
On April 13, 1999, West was informed that the 2224 Cooledge had sold, and would close at the end of April. On April 22, West was informed by the city that "sewer was not available to the vacant lot from Brewer Street." (Emphasis sic.)
West notified Reitz on April 29, 1999, that he "would not be completing the purchase of the property." Reitz filed a complaint against West in the Summit County Court of Common Pleas seeking specific performance on the contract or, in the alternative, money damages for breach. West counterclaimed for rescission and for return of the $500 earnest money he had paid.
Reitz moved for summary judgment. The motion is ambiguous as to whether Reitz was requesting summary judgment on her claim alone, on West's counterclaim alone, or on both her claim and on West's counterclaim. She explicitly asserted that she was "entitled to judgment as a matter of law and to the remedy of specific performance." As part of her motion, however, she also explicitly addressed arguments West made in his counterclaim for rescission.
In his response to Reitz' motion, West asserted that,
Plaintiff did not formally move the court for summary judgment * * * but merely submitted a memorandum in support of her theory that she is so entitled. However, in the interest of judicial economy the Defendant James M. West will treat Plaintiff's document as a motion for summary judgment on the defendant's counterclaim for rescission.
Reitz replied, explicitly requesting "summary judgment in the instant case," again without distinguishing between the claim and the counterclaim. The focus of her response was on West's right to rescind the contract.
The trial court determined that West did not have a right to rescind the contract pursuant to paragraphs four and twelve. It also excluded all evidence beyond the four corners of the contract, and determined that the contract was not the result of a mutual mistake. Because it found the contract was not the result of a mutual mistake, it also found that West did not have the right to rescind the contract on that basis.
In relevant part, the court stated:
 The Court finds that there are no genuine issues of material fact remaining to be litigated and that Plaintiff is entitled to specific performance on the Agreement for the purchase and sale of the lot with costs to the Defendant.
 Defendant has filed a counterclaim for rescission, requesting a return of the $500.00 paid as down payment on the subject lot. For the reasons previously stated, Defendant is not entitled to rescind the agreement. Defendant's counterclaim for rescission is dismissed.
 The Court finds that there are no genuine issues of fact remaining as to any parties involved and there is no just cause for delay.
 II
When jurisdiction appears uncertain, a court of appeals should raise issues of jurisdiction sua sponte. Kouns v.Pemberton (1992), 84 Ohio App.3d 499, 501. In this matter, two parties each brought a single claim against the other. The trial court asserted that Reitz was entitled to specific performance, but did not order it. Because it ordered nothing with respect to Reitz' claim, there is no final, appealable, order as to Reitz' claim for specific performance. Because there is no final, appealable, order as to Reitz' claim this court does not have jurisdiction to consider West's request to "reverse the trial court's Order * * * and to enter judgment in his favor on the Plaintiff's Complaint."
The trial court dismissed West's counterclaim for rescission, and found that there was no just reason for delay. Because that order determines an action and prevents West from obtaining a favorable judgment on his counterclaim, and because the court complied with Civ.R. 54(B) when it explicitly found that there was no just reason for delay, the dismissal of West's counterclaim is a final, appealable, order. See Chef Italiano Corp. v. Kent StateUniversity (1989), 44 Ohio St.3d 86, 88.
 A. Contractual Right to Void the Agreement
West has asserted that the contract permits him to rescind the agreement, and that the trial court incorrectly determined that it did not, when it dismissed his counterclaim for rescission in response to Reitz' motion for summary judgment.[1] In reviewing a trial court's grant of summary judgment, this court applies the same test a trial court is required to apply in the first instance. Berdyck v. Shinde (1993), 66 Ohio St.3d 573, 578. Summary judgement is proper if our review of the record properly before the trial court establishes that:
 (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
The interpretation of a clear and unambiguous contract is a matter of law. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph one of the syllabus. "Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions." Shifrin v.Forest City Ent., Inc. (1992), 64 Ohio St.3d 635, 638.
Here, both parties agree as to the material facts. West, or someone in his office, prepared the contract using the standard pre-printed agreement for purchase and sale of real estate. West signed the purchase agreement for the vacant lot on July 23, 1998. Reitz signed it on July 26, 1998. At the time Reitz signed it, three substantive changes were made. Both parties initialed the changes. In April 1999, Reitz informed West that the related parcel of land was being sold and that closing would occur on both parcels near the end of April. On April 29, 1999, on learning that city sewer was not available for the lot he had agreed to purchase, West informed Reitz that he "would not be completing the contract."
The contract gives West "30 days from date of Acceptance to inspect the property for its suitability for BUYER'S intended purpose, including sewer/septic permits. * * * If BUYER is not satisfied with the inspection/report, BUYER may elect to void this Agreement, in which case all monies shall be returned to BUYER without further liability." The contract further defines acceptance as "the signing and/or initialing of this Agreement by the latter of the parties to do so without making material change."
The latter signature on the document, and all changes, occurred on July 26, 1998. By the plain language of the contract, July 26, 1998, was when acceptance occurred. Pursuant to the cancellation clause, West was free to inspect the property to determine whether he would be able to obtain sewer permits, and if he could not, to void the agreement on or before August 25, 1998. West attempted to void the agreement on April 29, 1999. West's attempt to void the contract clearly occurred beyond the period during which the contract permitted it.
West has argued that because the closing of the sale was delayed indefinitely, "it would have been impossible for Mr. West to conduct any meaningful inspection * * * until after he was notified that the Special Condition had been fulfilled." West has argued that insisting his right to rescind the contract be limited by the language of the contract is unjust because "meaningful inspection" could not occur during the time to which both parties agreed. West was aware when he initialed the contract on July 26, 1998, that closing might not occur for an indefinite period, yet he chose not to add an additional period during which he could rescind the contract or to alter the preprinted definition of acceptance. This is not an instance in which special circumstances imbue the words of the contract with a special meaning, but rather one in which one party has now realized he might have better protected his interests by requiring the inspection period to follow the fulfillment of the special condition, rather than acceptance.
The contract between the parties permitted West to void the contract within thirty days of acceptance if his inspection revealed that the property was not suitable for his needs. West's attempt to void it eight months beyond that thirty-day window was not authorized by the contract. Based on this theory, Reitz was entitled to a judgment dismissing the counterclaim for rescission, as a matter of law. West's first assignment of error is overruled.
 B. Mutual Mistake
West has also argued that he is entitled to be excused from performance of the contract because the contract was entered into pursuant to a mutual mistake. Reitz, as the moving party bears the burden of articulating her claim and of affirmatively demonstrating that there are no genuine issues of material fact with respect to every essential element of the claim. See Mitseffv. Wheeler (1988), 38 Ohio St.3d 112, 114-115. That demonstration must be based on the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact. Id. at 114, citingCelotex v. Catrett (1986), 477 U.S. 317, 323, 91 L.Ed.2d 265,274. When the moving party has met its burden, the burden shifts to the non-moving party to respond. Dresher v. Burt (1996),75 Ohio St.3d 280, 293.
Rescission of a contract based on mutual mistake is permitted by Ohio law under some circumstances. In Irwin v. Wilson (1887),45 Ohio St. 426, 439, the Supreme Court of Ohio granted the rescission of a contract on the basis of "a mistake that may happen to the most careful of men." The Irwin court explained that, "As the mistake arose from an innocent error in all the parties, natural justice forbids the loss of one arising out of it, should be the gain of the other." Id. Based on Irwin, the Supreme Court of Ohio recently permitted the rescission of a contract where the trial court found there was a mutual mistake that was material to the contract, and where the complaining party was not negligent in failing to discover the mistake. Reilley v.Richards (1994), 69 Ohio St.3d 352, 352-353. The determination that a party's actions are negligent is generally one of fact.Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 288.
To meet her burden pursuant to Dresher, 75 Ohio St.3d at 293, Reitz pointed to the language of the contract, which does not make the sale contingent on access to city sewer. Reitz also submitted affidavits from herself and her real estate agent in which each averred that neither told West that the vacant lot had access to city sewer. According to Reitz, there is no mutual mistake because West's disagreement with her is based on his belief that the contract omitted a material term. In contrast, she believes that the contract is a complete expression of the agreement between them.
In response, West submitted an affidavit in which he averred that he told Keys, Reitz' agent, that he was interested in purchasing the lot only if it had access to city sewer.[2] He stated that he had inspected the surrounding area and believed it to be served by sewer. He based that conclusion on his observation of fire hydrants on the streets adjacent to both the front and side boundaries of the property and on recently built homes directly across the street from the property on lots too small to permit a septic system. In addition, he stated that Keys told him the property was served by sewer, and attached a copy of an e-mail Keys sent to Reitz, in which Keys stated, "There is no sewer line running along Brewer[.] * * * Both [West] and I checked with the city before his contract was written and they told us there was no problem." West certified in his affidavit that the document was a true and accurate copy of the e-mail Keys sent to Reitz, which West received as a carbon copy from Keys. After signing the contract, West sent Helen Bailey, his partner in the venture, to the City of Akron to inquire about sewer availability. She relayed to him that "public sewer was available to the vacant lot." West asserted that he did not take any further steps, because obtaining a permit to tap in would cost approximately $895, and he did not wish to incur the cost until the related lot sold, at some indefinite time in the future.
According to West, the mutual mistake is not that material terms were left out of the contract, but that both parties entered into the contract on the mutual and mistaken belief that the lot was served by the city sewer. West asserted that both parties were aware that access to city sewer was a factual assumption, in the absence of which, the contract would not have been created.
Reitz, in response, asserted that West had accepted the risk of the mistake in the agreement, or in the alternative, that he had accepted his limited knowledge of the facts as sufficient.
The trial court correctly excluded the parol evidence that West urged it to consider in reviewing his assertion that the inspection clause of the contract was ambiguous. See Shifrin,64 Ohio St.3d at 638. With respect to demonstrating the existence of a mutual mistake, however, the trial court's refusal to consider extrinsic evidence was improper. Parol evidence is generally admissible to demonstrate that both parties were operating on the basis of a mutual mistake of fact at the time they made their agreement, because the presence of a mutual mistake of fact calls into question the very existence of the contract. See GeneralTire Co. v. Mehlfeldt (1997), 118 Ohio App.3d 109, 114; Mangano v.Dawson (June 13, 1995), Columbiana App. No. 93-C-72, unreported;Neininger v. State (1893), 50 Ohio St. 394, 400.
A genuine issue of material fact exists as to whether the contract was premised on a mutual mistake of fact. Keys and Reitz asserted that they did not inform West that sewer was available. West asserted that Keys told him it was available. The e-mail from Keys to Reitz, taken in the light most favorable to West, establishes that at the time of the transaction Keys believed sewer was available, whether or not he conveyed that information to West. West's observations of the immediate neighborhood, were consistent with the assurance he averred Keys gave him that city sewer was available. Within the time explicitly permitted for cancellation, West also verified this assertion with the City of Akron. This is sufficient to establish that a genuine issue of fact exists as to whether both parties believed that the property was served by city sewer at the time that they entered into the contract.
West averred that he informed Keys that he would not purchase the property unless it had access to city sewer. As such, taken in the light most favorable to West, the contract would not have been formed but for the parties' mistaken belief that city sewer existed. Viewed in another manner, West provided the trial court with documents indicating that if he is able to obtain an easement it would cost him approximately $5400 more to obtain what both parties believed he was purchasing, a lot with access to city sewer. He has also averred Reitz was unwilling to provide an easement through the adjacent lot. In the event that an easement cannot be obtained, West may not be able to build on the lot at any cost. Viewed in the light most favorable to West, as the nonmoving party, Reitz' performance in transferring a lot without access to city sewer to West, is thus materially different than both parties understood her performance would be. The mistake of fact has a material effect on the exchange of performances, and is thus material to the contract.
Because the mistake of fact is material to the contract, it is a genuine issue of material fact as to the resolution of West's counterclaim.
Nonetheless, West may not rescind the contract if he was negligent in failing to discover the mistake. From the evidence before the trial court, viewed in the light most favorable to West, West relied on his expertise in concluding that his observations of the lot and the surrounding lots were consistent with the availability of city sewer. He was told that city sewer was available to the lot, both by the real estate agent working on behalf of Reitz, and by the City of Akron. West could have spent close to $900 for permission to tap into the sewer line, and had he done so would likely have learned that sewer was not, in fact, available. He chose not to pursue a permit to tap into the sewer line because his ability to build on the lot was delayed indefinitely until the sale of the adjacent lot owned by Reitz. Because the closing occurred approximately ten months after the parties contracted for the sale, for Reitz' convenience, it was not until then that West discovered that he and Keys were mistaken about the availability of sewer. West immediately notified Reitz, through Keys, of his discovery and indicated he would not be "completing the contract."
As noted above, the determination as to whether actions are negligent is generally one of fact. This case is no exception. West took steps to determine that the property was suitable for the express purpose for which he agreed to purchase it. He made direct observations, made inquiries both before the sale and during the contractual escape period, and on that basis believed that city sewer was available. Following a delay to which he had agreed, but over which he had no control, he discovered that he had been given incorrect information. The information was given to him by two individuals who could reasonably have been expected to have accurate information: the owner of the property, through her agent, and the City of Akron. To further verify that information would have cost a significant amount of money, and would initiate the process of developing the lot well in advance of when he would actually be able to do so. One of the individuals who gave him the incorrect information would now benefit from the enforcement of the contract. The facts are not so extreme as to establish that West was negligent, as a matter of law, in not further verifying whether the property had access city sewer. Because the existence of negligence by West might prevent him from rescinding the contract based on a mutual mistake of fact, the factual determination of whether he was negligent is material with respect to the resolution of his counterclaim.
Reitz has asserted that West assumed the risk, as part of the contract, by virtue of the clause that permitted him thirty days to verify that the property was suitable for the purpose for which he intended it, and to rescind the contract if it was not. In the alternative, she has asserted that West was aware that he had limited knowledge, and chose to proceed in the face of that limited knowledge. In Reilley, the Supreme Court reviewed a similar clause and circumstances and determined that rescission of the contract was not precluded. Reilley,69 Ohio St.3d at 353-354. In that case, the contract permitted the buyer sixty days to inspect the property for suitability of the property with respect to "soil, engineering, utility and other site related considerations." Reilley, 69 Ohio St.3d at 353. The property turned out to be situated on a floodplain, a fact of which neither party was aware. The buyer had his builder inspect the property within the period during which rescission was permitted. The existence of the floodplain was not discovered, in part because the builder did not review drawings that would have revealed the existence of the floodplain. The Supreme Court considered the existence of this clause, and the knowledge of the buyer, as part of the factual determination as to whether the buyer was negligent in not discovering the mistake of fact, rather than as an absolute bar to rescission. Id. at 353-354. We see no reason to treat it differently here. The similarity to Reilley suggests that it is inappropriate to find that West was negligent, as a matter of law, because he did not discover the lack of access to city sewer within the thirty-day cancellation window.
West has established that genuine issues of material fact exist, with respect to the presence of a mutual mistake of fact and as to whether he was negligent in not failing to discover the mistake. Because of this, Reitz is not entitled to judgment as a matter of law on West's counterclaim. West's second assignment of error is sustained.
 III
The decision of the trial court as to Reitz' claim for specific enforcement of the contract is not a final, appealable order. This court did not review any arguments by West or Reitz with respect to the trial court's determination that Reitz was entitled to specific performance, because we do not have jurisdiction to do so. West's first assignment of error is overruled, because his attempted rescission of the contract within thirty days of notification that the special condition had been fulfilled is not authorized by the plain language of the contract. Pursuant to this theory, Reitz would have been entitled to judgment as a matter of law. However, West suggested a second legal theory on which he was entitled to rescind the contract. With respect to his second theory, because there is a genuine issue of material fact as to whether both parties mistakenly believed that the vacant lot had access to city sewer, and as to whether West was negligent in failing to discover the mistake, Reitz was not entitled to judgment as a matter of law on West's counterclaim for rescission based on mutual mistake. West's second assignment of error is sustained. The judgment of the trial court dismissing West's counterclaim is reversed, and the cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellee.
Exceptions.
 ___________________________ WILLIAM R. BAIRD
FOR THE COURT, CARR, J., WHITMORE, J., CONCUR
[1] Although Reitz did not explicitly request summary judgment on West's counterclaim, her motion addressed the substance of his counterclaim. In response, West explicitly agreed to "treat the Plaintiff's document as a motion for summary judgment on the Defendant's counterclaim for rescission." The court subsequently treated the motion and the related documents as a motion by Reitz for summary judgment on West's counterclaim. By their actions, both parties have waived any right they may have had to assert that the motion for summary judgment was not what both parties and the court construed it to be.
[2] Both parties refer to Keys as Reitz' agent with respect to the sale of her property. No challenge to the existence of a principal/agent relationship was raised either to the trial court or on appeal, so for purposes of this review Keys is treated as Reitz' agent.