[Cite as *Drillers Place Ltd. v. Mormack Industries, Inc.*, 2016-Ohio-167.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

DRILLERS PLACE, LTD.

    Appellant

    v.

MORMACK INDUSTRIES, INC., et al.

    Appellees

C.A. No.      13CA0056

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.     12-CV-0699

DECISION AND JOURNAL ENTRY

Dated: January 19, 2016

---

CARR, Judge.

**{¶1}** Appellant Drillers Place, Ltd. appeals the judgment of the Wayne County Court of Common Pleas that granted judgment in favor of appellees Mormack Industries, Inc. and Paul McCloskey, Jr. This Court affirms in part, reverses in part, and remands.

I.

**{¶2}** Noah and Elizabeth Hilty were the owners of property, including 77 acres of land in Milton Township, Wayne County. In 1973, the couple granted an oil and gas lease to Mormack Industries, Inc. ("Mormack"). A well was completed on the property in 1980. Pursuant to the terms of the lease, certain royalties were to be paid to the landowners/lessors under certain conditions. In addition, Mormack assigned some royalty interests to investors. Paul McCloskey, Jr. inherited such an interest. No other investor-interests have been identified.

**{¶3}** Marvin and Mary Hilty ("Hilty") subsequently acquired ownership of the property and became the lessors under the lease. In October 2011, Drillers Place, Ltd. ("Drillers Place")

acquired almost 72 acres of the leased property and became the lessor under the oil and gas lease. Believing that Mormack had breached express terms and implied covenants under the lease, Drillers Place filed an affidavit of non-compliance at the end of February 2012. Edward Mack, President of Mormack, responded by filing a lease affidavit in which he averred that Mormack had not forfeited the lease.

{¶4}  Drillers Place sued Mormack, alleging the following claims: (1) quiet title; (2) declaratory relief holding the lease invalid as unconscionable and against public policy; (3) declaratory relief holding the lease void after forfeiture or cancellation; (4) invalidating the lease on the basis of mutual mistake of fact; (5) lease reformation; (6) slander of title; and (7) partition. Drillers Place also sued Mr. McCloskey, (1) demanding that he appear to assert and prove his interest or be forever barred, and (2) for partition. Drillers Place demanded a jury trial.

{¶5}  The parties filed competing motions for summary judgment which the trial court denied. The trial court scheduled the matter for trial. Mormack moved to bifurcate trial on the equitable claims, which it argued should be tried to the bench, and the lone claim (slander of title), which could be heard by a jury. The trial court granted Mormack's motion to bifurcate "[b]y agreement of the parties," and scheduled a bench trial as to all claims except slander of title. The court further ordered that "[t]he remaining claim for slander of title will be scheduled for a jury trial at a later date." At the conclusion of the bench trial, however, the trial court rendered judgment in favor of Mormack and Mr. McCloskey on all pending claims, expressly noting that "[a]ll counts * * * have been decided * * *, and there are no further matters to be decided."

{¶6}  Drillers Place filed a timely appeal in which it raises eight assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED AS A MATTER OF LAW BY NOT FINDING THAT [MORMACK] MATERIALLY BREACHED THE LEASE AGREEMENT BY FAILING TO RESUME PAYING DELAY RENTAL PAYMENTS WHEN THE SALE OF OIL AND GAS, AND THE PAYMENT OF ROYALTY TO [DRILLERS PLACE], TERMINATED FOR MORE THAN ONE YEAR.

**{¶7}** Although its argument lacks clarity, Drillers Place seems to argue in its first assignment of error that the trial court misconstrued the terms of the oil and gas lease relating to the payment of delay rental payments. Based on its citation to law regarding the standard of review for and means of effecting contract construction, coupled with a lack of citation to the parts of the record of the evidence adduced at trial[1] which it vaguely references, this Court constrains our review to consideration of the trial court's construction of the delay rental payments portion of the lease.[2] *See* App.R. 16(A)(7) and 12(A)(2). Upon consideration, we conclude as a matter of law that, given the nature of the well at issue, the delay rental payment provision was not applicable. As the provision was not applicable, there can be no breach. Drillers Place's argument, therefore, is not well taken.

**{¶8}** This Court recognizes the long established legal foundation that

---

[1] Although Drillers Place quotes extensively in its reply brief from the trial transcript, it fails to cite to any portions of the record on which it purportedly relies in its initial brief. Moreover, Drillers Place fails to identify with specificity the provisions of the lease which it argues are unambiguous and have been breached by Mormack.

[2] Drillers Place sets forth vague allegations in its initial brief that Mormack ignored or applied its own interpretation to lease provisions without citing the provisions allegedly breached. Given the lack of clarity illuminating the issue at hand, we take our guidance from the text of the enunciated assignment of error which alleges breach for failure to pay delay rental payments. The assigned error indicates that delay rental payments were required under the terms of the lease when (1) oil and gas sales, and (2) royalty payments, both ceased for more than one year.

[t]he rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument[.] Such leases are contracts, and the terms of the contract with the law applicable to such terms must govern the rights and remedies of the parties.

*Kramer v. PAC Drilling Oil & Gas, L.L.C.*, 197 Ohio App.3d 554, 2011-Ohio-6750, ¶ 10 (9th Dist.), quoting *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 129 (1897). This Court reviews the construction of written contracts de novo. *Kramer* at ¶ 10, citing *Bath Twp. v. Raymond C. Firestone Co.*, 140 Ohio App.3d 252, 256 (9th Dist.2000). To that end, "'[t]he purpose of contract construction is to discover and effectuate the intent of the parties. * * * The intent of the parties is presumed to reside in the language they chose to use in their agreement.'" *Firestone*, 140 Ohio App.3d at 256. Where that language is clear and unambiguous, courts must apply the plain language of the contract. *AKC, Inc. v. ServiceMaster Residential Commercial Servs.*, 9th Dist. Summit No. 27070, 2014-Ohio-2627, ¶ 5.

{¶9} The oil and gas lease at issue conveyed from the landowner/lessor to the lessee the right to drill for oil and gas during a primary term of ten years, with such term being extended as long as any well was producing "oil and gas, or either of them[.]" The lease further provided, in relevant part:

In consideration of the premises the lessee covenants and agrees:

1st. To deliver to the credit of lessor, free of cost, into tank reservoirs or into the pipe line to which lessee may connect wells on said land, the equal one-eighth (1/8) part of *all oil produced* and saved from the leased premises.

2nd. To pay lessor one-eighth (1/8) of the gross proceeds each year payable quarterly, *for the gas from each well where gas only is found,* while the same is being used off the premises, and if used in the manufacturing of gasoline a royalty of one-eighth (1/8), payable monthly at the prevailing market rate for gas. Where *such gas* is not sold or used for a period of one year, lessee shall pay or tender as royalty an amount equal to the yearly delay rental as provided by the provisions of

the lease,[3] payable annually at the end of each year during which *such gas* is not sold or used, and which such royalty is so paid or tendered this lease shall be held as producing property under the above paragraph setting forth the primary term hereof. Lessor is to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling on said land during the same time, by making lessor's own connections with the well at lessor's own risk and expense.

3rd. To pay lessor *for gas produced from any oil well* and used off the premises or in the manufacture of gasoline or any other product a royalty of one-eighth (1/8) of the proceeds, payable monthly at the prevailing market rate at the mouth of the well.

(Emphasis added.)

**{¶10}** The lease does not dictate which type of well must be drilled, but rather anticipates that any well may produce only oil, only gas, or both oil and gas. Accordingly, the lease establishes consideration contingencies to compensate the landowner/lessor for foregoing the oil and gas rights associated with the property. Specifically, (1) where a well produces oil (whether alone or in conjunction with gas), the lessor is entitled to a royalty payment for oil; (2) where a well produces gas in conjunction with oil, the lessor is entitled to a royalty payment for gas; and (3) where a well produces only gas, the lessor is entitled to a quarterly royalty payment when there is production that is used off the premises and to a monthly royalty payment when the gas production is being used in the manufacturing of gasoline. But where a gas only well fails to produce and no gas is used or sold for a period of one year, the lessor is entitled to the payment of the established delay rental amount. Otherwise, except in case of a delay in commencing the initial well within one year of the execution of the lease, and thereafter within each subsequent year, the lease made no provision for a delay rental payment.

---

[3] The lease established an annual delay rental payment amount of $77.00.

**{¶11}** The evidence adduced at trial demonstrated that Mormack had only drilled one producing well on the premises and that that well produced both oil and gas. Drillers Place does not dispute that the well is not a gas only well. Because the well produces both oil and gas, the second consideration provision in the lease is not applicable by its plain language. Accordingly, the requirement that Mormack as the lessee pay Drillers Place as the lessor a delay rental payment in the event of a year-long cessation of production or sale of gas from the well is not implicated.[4]

**{¶12}** The trial court did not err as a matter of law in construing the lease to give no effect to the second consideration contingency relevant to gas only wells. Because the delay rental payment provision was not applicable to the specific well at issue, it is axiomatic that Mormack could not have breached that provision. The first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY FINDING THAT [MORMACK'S] FAILURE TO RESUME PAYMENT OF DELAY RENTAL PAYMENTS WAS JUSTIFIED DUE TO A MISTAKE OR CREDIT RESULTING FROM AN EARLIER OVERPAYMENT AS SUCH FINDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶13}** Drillers Place argues that the trial court's finding that Mormack did not breach the delay rental payment provision of the lease was against the manifest weight of the evidence. Based on this Court's resolution of the first assignment of error in which we concluded that the delay rental payment provision was not implicated, the second assignment of error has been rendered moot and we decline to address it. *See* App.R. 12(A)(1)(c).

---

[4] For purposes of this assignment of error, this Court does not consider and need not determine whether gas production from the well ceased for a period of one year.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO FIND THAT THE LEASE PROVISIONS, AS IMPLEMENTED AND CONTROLLED BY [MORMACK], CONSTITUTE[] CONDITIONS THAT ARE ENTIRELY WITHIN THE CONTROL OF [MORMACK], WHICH RENDERS THE CONTRACT ILLUSORY AS THE OBLIGATION TO PERFORM BY [MORMACK] [WAS] WITHIN THE SOLE CONTROL OF [MORMACK] AND THE CONCEPT OF MUTUALITY OF OBLIGATION GOES HAND IN HAND WITH THE CONCEPT OF ILLUSORY CONTRACTS.

{¶14} Drillers Place argues that the lease contract is illusory for failure of mutuality and consideration. This Court disagrees.

{¶15} The essential elements of a contract include "an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16. "'[T]he concept of mutuality of obligation expresses the idea that both parties to the contract must be bound or neither is bound.'" *MEP of Ohio, Inc. v. Lamkin*, 9th Dist. Summit No. 23862, 2008-Ohio-1459, ¶ 5, quoting *Helle v. Landmark, Inc.*, 15 Ohio App.3d 1, 12 (6th Dist.1984).

{¶16} Drillers Place argues that there is failure of mutuality and consideration in the agreement because it allows Mormack to encumber the property's mineral rights in perpetuity without paying for that benefit or further developing the estate. As to further development of the estate, the lease expressly states that the lessee must drill a well or make delay rental payments, but that lessee need not drill more than one well. In consideration of Mormack's right to produce oil and gas, the lease provides for ongoing royalty payments to the lessor. Payment of consideration, therefore, is ongoing, as the landowner/lessor continues to derive a benefit from the lessee's continued production on the land. Contrary to Drillers Place's assertion that

Mormack is free to encumber the mineral rights in perpetuity without conferring a benefit on the lessor, the lease contains an express provision that the lease will remain in effect only so long as the lessee continues to produce oil and/or gas. Specifically, the lease states that, after the termination of the primary ten-year term, the lease "term shall extend as long thereafter as oil and gas, or either of them, is produced by lessee from said land * * *."

{¶17} Drillers Place offers no evidence and makes no argument as to why the terms of the lease, which do not require the existence of more than one well; which provide for the ongoing payment of consideration in exchange for the lessee's continued production on the land; and which provide for an extension of the lease term only so long as the lessee is producing gas and/or oil, do not comport with the concepts of mutuality and consideration. The third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO FIND THAT [MORMACK'S] LEASE, AS IMPLEMENTED AND CONTROLLED BY [MORMACK], VIOLATES THE PUBLIC POLICY LAW OF THE STATE OF OHIO AS IT APPLIES TO THE UNDEVELOPED ACREAGE UNDER THE LEASE BETWEEN THE PARTIES.

{¶18} Drillers Place argues that the lease violates public policy because it allows Mormack to encumber the mineral rights in perpetuity without further developing the property to extract gas and/or oil. This Court disagrees.

{¶19} Courts accord great deference to the validity of contracts into which the parties have entered freely. *Cincinnati City School Dist. Bd. of Edn. v. Conners*, 132 Ohio St.3d 468, 2012-Ohio-2447, ¶ 15, citing *Lamont Bldg. Co. v. Court*, 147 Ohio St. 183, 184 (1946). The public policy exception to the freedom to contract is implicated, however, when there is an injurious impact on public morals, public health, public safety, and public welfare. *Conners* at ¶

17 ("[P]ublic policy is that principle of law which holds that no one can lawfully do that which has a tendency to be injurious to the public or against the public good. Accordingly, contracts which bring about results which the law seeks to prevent are unenforceable as against public policy."). *See also Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, ¶ 64 (9th Dist.); Ohio Jurisprudence 3d, Contracts, Section 94, at 528 (1980).

{¶20} Drillers Place relies on case law noting that state public policy "encourage[s] oil and gas production when the extraction of those resources can be accomplished without undue threat of harm to the health, safety and welfare of the citizens of Ohio." *Newbury Twp. Bd. of Twp. Trustees v. Lomak Petroleum (Ohio), Inc.*, 62 Ohio St.3d 387, 389 (1992). In this case, Mormack is using the leased property for oil and gas production. Drillers Place, however, arguably attempts to expand the public policy in support of mineral production to require a lessee to use continuing efforts to exhaust all mineral resources irrespective of the terms of the parties' agreement, as well as the cost of extraction. It cites no authority for this proposition, and this Court finds none.

{¶21} Moreover, in this case, the parties expressly agreed in the lease that no more than one well need ever be drilled on the premises. In addition, Mr. Mack testified at trial as to his credentials as a geologist and that Mormack conducts periodic seismic studies to determine the feasibility of drilling additional wells. To date, given the results of the seismic studies and the current state of technology, Mr. Mack testified that it is not economically practical to drill another well. Drillers Place presented no evidence to dispute that. The fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO FIND THAT MORMACK BREACHED THE IMPLIED COVENANT[] OF

CONTINUED DEVELOPMENT AS IT APPLIES TO THE UNDEVELOPED ACREAGE UNDER THE LEASE BETWEEN THE PARTIES.

**{¶22}** Drillers Place argues that the trial court erred by finding that Mormack did not breach the implied covenant of continued development under the lease. This Court disagrees.

**{¶23}** The Ohio Supreme Court has long recognized "the general principle that *absent express provisions to the contrary,* a mineral lease includes an implied covenant to reasonably develop the land." *Ionno v. Glen-Gery Corp.*, 2 Ohio St.3d 131, 132-133 (1983), citing *Beer v. Griffith*, 61 Ohio St.2d 119 (1980), paragraph two of the syllabus; *Venedocia Oil & Gas Co. v. Robinson*, 71 Ohio St. 302, 314 (1905); *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 127 (1897). Drillers Place argues that Mormack breached the implied covenant by failing to drill additional wells on the premises and explore production opportunities in deeper land formations. The argument fails, however, because the parties expressly agreed in the lease that "lessee shall in no event be required to drill more than one well on said unit." The trial court did not err in concluding that the lease expressly disclaims the implied covenant of continued development. The fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR VI

THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO FIND THAT THERE WAS A MATERIAL MUTUAL MISTAKE OF FACT BY THE PARTIES TO THE LEASE AGREEMENT AT THE TIME THE LEASE WAS SIGNED; THAT LEASE REFORMATION WAS REQUIRED AND THAT A PARTITION AND SEVERANCE OF THE FORMATIONS BELOW THE CLINTON SANDSTONE FORMATION WAS REQUIRED.

**{¶24}** Drillers Place argues that the trial court erred by failing to conclude that a mutual mistake of material fact rendered the lease invalid and subject to reformation. This Court disagrees.

**{¶25}** This Court has recognized:

> Reformation is the modification of an instrument to express the actual intent of the parties. It can be used to remedy a mutual mistake, but not a unilateral one. Reformation based on mutual mistake is appropriate when the parties made the same mistake and understood the contract as the complaint alleges it should have been. The party alleging mutual mistake has the burden of proving its existence by clear and convincing evidence.

(Internal citations omitted) *Gen. Tire, Inc. v. Mehlfeldt*, 118 Ohio App.3d 109, 115 (9th Dist.1997).

**{¶26}** Drillers Place argues that the parties did not intend to allow Mormack, in its sole judgment, to continue the lease in perpetuity. This Court previously discussed this issue and concluded that the lease provides for termination where there is no longer oil and gas production. Moreover, the lease provides for ongoing consideration in exchange for Mormack's ability to extract minerals on the premises, i.e., the continuing payment of royalties to the landowner/lessor. Accordingly, the lease by its plain language does not accord Mormack with sole discretion to continue the lease in perpetuity.

**{¶27}** To the extent that Drillers Place references "the undeveloped acreage," it does not clarify how there was a mutual mistake of material fact at the time the lease was executed. Even if we presume that "the undeveloped acreage" refers to land formations below the Clinton Sandstone level where the producing well exists, Drillers Place has not presented any evidence to show that Mormack and the Hiltys contemplated that any wells would only be drilled to the Clinton level and not beyond. Drillers Place has consistently argued that the lease was intended for the mutual benefit of the parties. Accordingly, in the absence of any language in the lease limiting the depth of the lessee's wells, the trial court was permitted to reasonably infer that the lessee was permitted to drill to any depth that would provide a benefit to both parties. In this case, Mr. Mack testified that based on his experience as a geologist, the repeated seismic studies Mormack has performed on the premises, and the current state of technology, it would not be

economically feasible to drill any deeper wells on the premises. Drillers Place did not present any evidence demonstrating the economic feasibility of drilling additional, deeper wells on the property. Based on the evidence adduced at trial, the trial court did not err by refusing to reform the lease. The sixth assignment of error is overruled.

## ASSIGNMENT OF ERROR VII

THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO IMPOSE A FORFEITURE OF THE UNDEVELOPED ACREAGE UNDER THE LEASE AGREEMENT BETWEEN THE PARTIES.

{¶28} Drillers Place argues that the trial court erred by failing to order forfeiture of the lease based on Mormack's breach of the implied covenant of continued development. Based on our resolution of the fifth assignment, in which we concluded that Mormack did not commit a breach, we necessarily overrule the seventh assignment of error.

## ASSIGNMENT OF ERROR VIII

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR BY GRANTING [MORMACK'S] MOTION TO BIFURCATE, DENYING [DRILLERS PLACE'S] RIGHT TO A JURY TRIAL, DENYING [DRILLERS PLACE'S] MOTION TO COMPEL AND PERMITTING USE OF EVIDENCE BY [MORMACK] NOT PREVIOUSLY DISCLOSED AND, ON ITS OWN MOTION, DENYING THE SLANDER OF TITLE CLAIM OF DRILLERS PLACE.

{¶29} Although Drillers Place identifies multiple issues in its enunciated assignment of error, it does not clearly develop many of those issues in its argument in support, and it makes no citations to law. Accordingly, we constrain our review to only the general issues we are able to glean from the argument.

Jury trial and bifurcation of claims

{¶30} It is well settled that "[a] plaintiff has no right to a jury trial * * * for the resolution of equitable claims, and a trial court may itself resolve those claims." *Raskow v.*

*Fortner*, 9th Dist. Summit No. 18399, 1998 WL 178570 (Apr. 15, 1998), *2. All of the claims asserted by Drillers Place, except for the slander of title claim for which it sought monetary damages, were equitable claims for which there was no right to a jury trial. Moreover, "[t]he decision whether to bifurcate a trial rests within the sole discretion of the trial court." *State ex rel. Rothal v. Smith*, 151 Ohio App.3d 289, 2002-Ohio-7328, ¶ 54. This Court will not reverse a trial court's decision to bifurcate claims unless that decision is "contrary to law, unreasonable, not supported by the evidence, or grossly unsound." *Id.*; *Menke v. Menke*, 9th Dist. Summit No. 27330, 2015-Ohio-2507, ¶ 8. As Drillers Place had no right to a jury trial on its claims seeking declaratory relief, reformation, partition, and to quiet title, we cannot say the trial court was unreasonable in bifurcating those claims from the slander of title claim seeking monetary relief.

Motion to compel and use of previously undisclosed evidence

{¶31} Drillers Place makes no argument in support of the issues enunciated in the assignment of error regarding its motion to compel or Mormack's use of previously undisclosed evidence at trial. "As an appellant is charged with providing a roadmap to guide this Court in our review, '[w]e decline to chart our own course when, as in this case, an appellant fails to provide any guidance.'" *Princess Kim, L.L.C. v. U.S. Bank, N.A.*, 9th Dist. Summit No. 27401, 2015-Ohio-4472, ¶ 12, quoting *Akron v. Johnson*, 9th Dist. Summit No. 26047, 2012-Ohio-1387, ¶ 3, citing App.R. 12(A)(2).

Sua sponte entry of judgment on the claim of slander of title

{¶32} Drillers Place argues that the trial court erred by sua sponte entering judgment in favor of Mormack on the claim of slander of title after the trial court previously bifurcated that claim and ordered that it would be scheduled for jury trial after the remaining claims had been heard during the bench trial. This Court agrees.

{¶33} A court speaks through its journal entries. *Finley & Sons Builders, Inc. v. Cross*, 9th Dist. Summit No. 23738, 2007-Ohio-7037, ¶ 7. The trial court issued an entry ordering that the claim asserted by Drillers Place alleging slander of title would be scheduled for jury trial at a later date. Accordingly, Drillers Place had no notice that it would be required to present evidence on that claim during the bench trial on its remaining claims. A basic tenet of due process is to provide litigants with notice and an opportunity to be heard. *See Fairfield Cty. Bd. of Commrs. v. Nally*, 143 Ohio St.3d 93, 2015-Ohio-991, ¶ 42 ("Although due process is flexible and calls for such procedural protections as the particular situation demands, the basic requirements of procedural due process are notice and an opportunity to be heard.") (Internal quotations and citations omitted.).

{¶34} After informing Drillers Place via journal entry that it would hold a separate jury trial on the slander of title claim, the trial court instead sua sponte disposed of that claim based on evidence adduced at the bench trial. As the trial court had bifurcated the equitable and legal claims, Drillers Place neither had notice that the trial court would consider that claim, nor the opportunity to be heard on that claim. Accordingly, the trial court deprived Drillers Place of due process by entering judgment on the slander of title claim at the conclusion of the bench trial.

{¶35} The eighth assignment of error is sustained solely as it relates to the trial court's entry of judgment as to the claim alleging slander of title. With regard to all other issues raised in the eighth assignment of error, it is overruled.

III.

{¶36} The first, second, third, fourth, fifth, sixth, and seventh assignments of error are overruled in whole. The eighth assignment of error is sustained in part, solely as it relates to the trial court's entry of judgment as to the claim alleging slander of title. The eighth assignment of

error is overruled as to all remaining issues. The judgment of the Wayne County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.


DONNA J. CARR
FOR THE COURT


HENSAL, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

JAMES M. RICHARD, Attorney at Law, for Appellant.

JOHN H. SCHAEFFER and KIMBERLY L. HALL, Attorneys at Law, for Appellees.