[Cite as *Westlake Assoc. v. C Supermarket*, 2018-Ohio-2446.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| WESTLAKE ASSOCIATES LLC | C.A. No. 17CA011160 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| C SUPERMARKET | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellants | CASE No. 13-CV-180782 |

DECISION AND JOURNAL ENTRY

Dated: June 25, 2018

SCHAFER, Presiding Judge.

{¶1} Defendants-Appellants, Brar Brothers Enterprises LLC and Gurcharan Brar (collectively "Brar"), appeal the judgment of the Lorain County Court of Common Pleas entering judgment in favor of Plaintiff-Appellee, Westlake Associates, LLC ("Westlake"). We affirm.

I.

{¶1} Brar was the owner of a food market known as C Supermarket in Elyria, Ohio that it wished to sell. On or about January 25, 2012, Brar entered into a "Business Broker Finder's Fee Agreement" with Westlake to facilitate the sale of the business. Mahesh Inukurthi signed the broker agreement as President of Westlake.

{¶2} Per the broker agreement, Westlake was to identify and introduce to Brar potential purchasers of C Supermarket. The broker agreement further stated that Brar was to compensate Westlake by commission in the event that Brar successfully closed on the sale of C Supermarket with a purchaser identified and introduced by Westlake. The broker agreement

contained a non-circumvention clause that entitled Westlake to commission if, after the expiration of the one-year term of the agreement, Brar closed on the sale of C Supermarket with a purchaser initially identified or introduced by Westlake during the term of the agreement. The rate of commission was stated as a $25,000.00 minimum plus any amount over a $345,000.00 purchase price.

{¶3} During the one year term of the broker agreement, Mr. Inukarthi, on behalf of Westlake, introduced three prospective purchasers to Brar. He introduced Samir Patel as a prospective purchaser sometime in February or March of 2012. Mr. Inukarthi and Mr. Patel both testified that Mr. Patel did not know Mr. Brar prior to this introduction. Mr. Brar testified, to the contrary, that he knew Mr. Patel before Mr. Inukarthi introduced them.

{¶4} Mr. Patel began to discuss potential sale terms with Brar. However, the negotiations were slow and Mr. Patel did not purchase the business until April of 2013. Per the Agreement of Purchase and Sale of Assets and Management Agreement of April 3, 2013, Brar sold C Supermarket to Kanudo Inc. for $157,000.00. Mr. Patel signed these agreements as "President" of Kanudo Inc. They eventually closed on the sale, and Mr. Patel commenced operation of C Supermarket.

{¶5} Upon learning of the sale to Mr. Patel, which occurred after the expiration of the broker agreement, Westlake sought to invoke the non-circumvention clause and recover a $25,000.00 commission from Brar under the broker agreement. Brar agreed that Westlake was entitled to commission in an amount much less than $25,000.00, and argued that the broker agreement was rendered void when the parties entered a subsequent broker agreement wherein Westlake agreed to accept lower commission. On July 1, 2013, Westlake filed the current

action against Brar alleging claims for receivership, breach of contract, promissory estoppel, unjust enrichment, and declaratory judgment[1].

{¶6} The matter proceeded to a bench trial on September 25, 2014, which concluded that same day. Mr. Inukarthi testified at trial. In lieu of live testimony, the trial court admitted the deposition transcripts of Mr. Brar and Mr. Patel. Westlake objected to the admission of Brar's purported copy of the contested second broker agreement into evidence. The trial judge indicated that he would need to review the testimony in the deposition transcript of Mr. Brar before making his decision as to the admissibility of the second agreement. Taking the matter under advisement, the trial judge indicated that he would complete his review of the deposition transcript, evidence, and notes and he anticipated issuing a ruling as soon as the following day.

{¶7} A period of thirty-two months passed before the trial court issued its decision on May 12, 2017. In the May 12, 2017 journal entry, the trial court found that Westlake established by a preponderance of evidence that Brar breached the broker agreement executed in January of 2012. The trial court further found that the evidence did not support Brar's claim that a second broker agreement was executed by both parties. Accordingly, the court granted Westlake judgment on its complaint in the amount of $25,000.00. Brar filed a timely appeal of this matter raising two assignments of error for our review.

II.

**Assignment of Error I**

**The trial court erred by delaying the decision in the case for thirty-two (32) months whereby said delay caused prejudice to [Brar] because the delay caused the trial court to become unfamiliar with the case and forget important testimonial evidence and misplace documents from the file.**

---

[1] Kanudo was initially named as a defendant, but was later voluntarily dismissed. The claim for receivership was also voluntarily dismissed.

{¶8} Brar cites to R.C. 2701.02 in support of the argument that the trial court erred by delaying the decision in the case for thirty-two months. R.C. 2701.02 states, in relevant part:

> When submitted to a court on motion, demurrer, or motion for new trial, or when submitted to a court on appeal on questions of law or on final trial on the issues joined, a cause begun in a court of record shall be determined and adjudicated within thirty days after such submission.

"It is well settled that the provisions of R.C. 2701.02 are directory, not mandatory." *Moeller v. Moeller*, 9th Dist. Summit No. 15680, 1993 Ohio App. LEXIS 50, 7 (Jan. 6, 1993), citing *Kyes v. Pennsylvania R.R. Co.*, 158 Ohio St. 362, 363 (1952) (Stating that the provisions are only "binding on the conscience of a judge.")

{¶9} While a thirty-two month delay in issuing a decision in a bench trial may be excessive, the delay alone does not constitute reversible error unless Brar was prejudiced. *See Friess v. Hague*, 9th Dist. Lorain No. 96CA006518, 1997 Ohio App. LEXIS 3465, 4-5 (Aug. 6, 1997) (Holding that even where a trial court's delay in rendering a decision was "uncommonly lengthy under the circumstances," it is not reversible where appellant fails to demonstrate prejudice as a result of the delay.) Furthermore, although the reason for the delay is not evident, our review of the record shows that the trial court conducted several status conferences with the parties after the trial and prior to the ruling. It appears that Brar was represented and participated in these status conferences and there is no indication that Brar ever moved the trial court to issue a decision. Thus, Brar's apparent acquiescence in the delay tends to contradict a claim that Brar was prejudiced by the delay. *Id*. at 4. Nonetheless, Brar asserts three issues to demonstrate prejudice by a delay in the trial court's ruling.

**Deposition Transcript of Samir Patel**

{¶10} First, Brar contends that "the trial court forgot to consider important testimonial evidence." The May 12, 2017 journal entry specifically indicated that it reviewed the deposition

transcript of Mr. Brar in addition to a transcript of the testimony presented at trial, but omitted any explicit reference to the deposition transcript of Mr. Patel. Based on this, Brar makes the assumption that the trial court forgot to consider Mr. Patel's deposition. This contention appears to have little to do with the delay in ruling, and more to do with Brar's belief that Mr. Patel's testimony supported a different outcome at trial. However, Brar goes on to argue that it is irrelevant whether Mr. Patel's deposition would have made difference in the case because the fact that the trial court failed to consider the important testimonial evidence is prejudicial. Brar has failed to establish that the trial court did, in fact, forget to consider Mr. Patel's deposition, and has not demonstrated prejudice on this basis.

**Evidentiary Rulings**

{¶11} Next, Brar argues that the delay caused the trial court to forget to rule on the admission of a disputed exhibit—the purported second broker agreement—which the judge held in abeyance until he was able to review Mr. Brar's deposition transcript. In the merit brief, Brar contends that "[i]f the [trial] court did not consider the [purported second broker agreement] due to a rule of evidence, then [Brar] should be able to challenge this." In the May 12, 2017 journal entry, the trial court found that the evidence was insufficient to find that the second broker agreement was executed by both parties. Implicit in this finding is the trial court's consideration of the second broker agreement, which would entail its admission into evidence. Brar has not established that the trial court forgot to consider the contested second broker agreement as a result of the delay, and has not demonstrated prejudice on this basis.

**Missing Documents**

{¶12} Finally, Brar claims prejudice because the delay in the decision caused the trial court's file to become incomplete. Brar claims that certain documents were either lost or

misplaced from the file and, therefore, unavailable to the trial court when it made its final decision. We conclude, based upon this Court's review of the record, that Brar is incorrect. The four documents Brar references are listed as follows on the transcript of the record certified by a deputy clerk for the Lorain County Court of Common Pleas: 1 – plaintiff's complaint, 23 – order dismissing count one of the complaint, 26 – notice of dismissal of Kanudo, Inc., and 84 – order dismissing claim for attorney fees. Each of these documents is time-stamped and physically present in the record, and there is no indication in the record that any of the documents have, at any time, been lost or misplaced. Thus, Brar could not have been prejudiced on this basis.

{¶13} We conclude that Brar has not demonstrated any prejudice as a result of the trial court's delay in issuing a decision. Accordingly, Brar's first assignment of error is overruled.

## Assignment of Error II

**Whether the trial court erred by deciding in favor of Westlake where the decision was against the manifest weight of the evidence[.]**

{¶14} Brar argues in the second assignment of error that the trial court's decision was against the manifest weight of the evidence. To determine whether a trial court's ruling is against the manifest weight of the evidence in a civil case, this Court

> weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, (9th Dist. 2001). Brar argues that in this case the trial court issued a "short decision" and "failed to establish any of the elements of the remaining four counts" and asserts that the credible evidence in the case supported Brar.

**{¶15}** In the brief May 12, 2017 journal entry, the trial court made two findings: first, that Brar breached the broker agreement, and second, that the evidence was insufficient to support Brar's claim that the parties entered into a second broker agreement. The trial court then entered judgment in the amount of $25,000.00 as prayed for in Westlake's complaint. Because Brar's defense to the breach of contract claim is somewhat vague, it is difficult to discern how the evidentiary issues Brar refers to in the brief are relevant to the trial court's decision. On one hand, Brar concedes that Westlake is entitled to commission, but contends that commission must be based on the second broker agreement. On the other hand, Brar seems to argue that Westlake is not entitled to recover because Westlake did not do enough to effectuate the sale of the business. Still yet, Brar argues that Westlake is not entitled to commission because Mr. Brar claims to have known Mr. Patel before Mr. Inukarthi introduced them.

**Second Broker Agreement**

**{¶16}** Regarding the trial court's finding that the evidence did not support the conclusion that the parties executed a second broker agreement, Brar argues that "there was reason to believe" that the parties entered a second broker agreement. Brar claims that the parties entered a second agreement in July of 2015, because Brar was frustrated that nothing was happening with the sale of the business, though Brar has not clarified how the second agreement might expedite a sale. In this purported agreement, Brar avers that Westlake agreed to accept a lower commission, reduce it to a six-month term, and eliminate the non-circumvention clause.

**{¶17}** Westlake denies having ever entered into a second agreement, and there is a lack of evidence in the record to show an incentive for Westlake to do so. Mr. Inukarthi claimed that he never signed the purported copy of the second agreement, and argues that his signature is noticeably forged on the document. Westlake asserts that Brar was unable to produce an original

signed copy of the second broker agreement, and Mr. Brar could not attest to having witnessed Mr. Inukarthi sign the second broker agreement.

{¶18} There is conflicting evidence and testimony as to whether the parties entered into a second agreement. However, our review of the foregoing evidence and testimony of the witnesses leads this Court to conclude that the trial court did not err in determining that the second agreement was not executed by both parties. Accordingly, Brar has not established that the second agreement precludes the enforcement of the broker agreement entered in January of 2012, which the trial court determined Brar breached.

**Breach of the Broker Agreement**

{¶19} Brar suggests that the evidence shows that Westlake did not do enough to advertise and facilitate the business or participate in the sale process, though Brar has not identified any evidence to suggest that Westlake was obligated to do so under the broker agreement. The broker agreement required Westlake to "identify and introduce potential purchasers of [C Supermarket]" and required "[Brar] to compensate [Westlake] in the event that [Brar] successfully closes on the sale of [C Supermarket] with a purchaser identified and introduced by [Westlake.]" Brar has not demonstrated that Westlake failed to satisfy any contractual obligations, nor has Brar clarified how any failure by Westlake to advertise or participate in the sale might be relevant to the trial court's decision that Brar breached the broker agreement.

**Non-circumvention Clause**

{¶20} Finally, Brar contends that the sale of C Supermarket occurred after the expiration of the broker agreement. Westlake, however, asserts that the non-circumvention clause entitled Westlake to commission if, after the expiration of the one-year term of the agreement, Brar

closed on the sale of C Supermarket with a purchaser initially identified or introduced by Westlake during the term of the agreement. Brar contends that the non-circumvention clause is inapplicable because Mr. Brar claims that he knew Mr. Patel prior to Westlake identifying and introducing Mr. Patel as a buyer.

{¶21} Mr. Brar did testify that he knew Mr. Patel prior to the sale. Mr. Inukarthi, in contrast, testified that he did not believe that the parties knew each other prior to his introduction. However, the most crucial and credible testimony is that of Mr. Patel, who avers that he did not know Mr. Brar prior to Mr. Inukarthi's introduction of the two men. Brar has not demonstrated that the weight of the evidence supports his claim that Mr. Patel was not introduced to Brar as a potential purchaser during the term of the broker agreement.

{¶22} We conclude that Brar has not shown that the trial court's decision is not supported by the weight of the evidence. Accordingly, Brar's second assignment of error is overruled.

### III.

{¶23} Both of Brar's assignments of error are overruled. The decision of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, J.
DISSENTING.

{¶24} I respectfully dissent from the judgment of the majority as I would sustain a portion of Brar's first assignment of error. This Court has routinely held that a trial court speaks through its journal entries. *See, e.g., Drillers Place, Ltd. v. Mormack Industries,* 9th Dist. Wayne No. 13CA0056, 2016-Ohio-167, ¶ 33. Here, in its judgment entry, the trial court specifically listed the evidence it considered: the deposition transcript of Mr. Brar and the transcript of the trial testimony. Notably absent from the list was the deposition transcript of Mr. Patel. While it is possible that the trial court's failure to include Mr. Patel's deposition transcript in that list was merely a typographical omission, it is equally possible that the trial court omitted that transcript from the list because the trial court failed to consider that evidence. As it is not the role of this Court to review evidence in the first instance and arrive at a verdict, I would sustain the relevant

portion of Mr. Patel's first assignment of error and remand the matter for the trial court to consider all of the evidence and thereafter render a verdict. *See Matus v. Jacts Group, LLC*, 9th Dist. Medina No. 17CA0056-M, 2018-Ohio-1439, ¶ 11.

APPEARANCES:

PATRICK DICHIRO, Attorney at Law, for Appellants.

THOMAS M. HORWITZ, Attorney at Law, for Appellee.